IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

MARANDA L. CARPITCHER,        )
                              )
       Plaintiff,             )
                              )
v.                            )    Case No. CIV-23-CV-090-SPS
                              )
MARTIN O'MALLEY,[1]           )
Commissioner of the Social    )
Security Administration,      )
                              )
       Defendant.             )

**OPINION AND ORDER**

The claimant Maranda L. Carpitcher, requests judicial review pursuant to 42 U.S.C. § 405(g) of the denial of benefits by the Commissioner of the Social Security Administration. She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted for Kilolo Kiakazi as the Defendant in this action.

engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

### Claimant's Background

Claimant was born on July 17, 1978, and was 42 years old on the alleged disability onset date. (Tr. 35). She was 44 years old at the time of the administrative hearing. (Tr. 47). She has completed high school and has vocational training in computer business technology. (Tr. 55). Claimant's past relevant work includes experience as a bookkeeper, and a loan officer. (Tr. 56-57). Claimant alleges she has been unable to work since December 17, 2020. (Tr. 18).

### Procedural History

Claimant filed applications for Title II disability insurance benefits on July 1, 2021, and on the same date she also filed an application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. (Tr. 226-227, 354-377). Her applications were denied. ALJ Michael Mannes held an administrative hearing on August 8, 2022 (Tr. 47-77) and determined that Claimant was not disabled in a written decision dated October 20, 2022. (Tr. 15-46). The Appeals Council denied review, so the ALJ's written opinion became the final decision of the Commissioner for purposes of appeal.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. At step two, the ALJ found that Claimant had several severe physical and mental impairments, including carpal tunnel syndrome; fibromyalgia; respiratory disorders; trauma and stressor related disorders; bipolar and related disorders; and anxiety and obsessive-compulsive disorders. (Tr. 21).

Next, he found that Claimant's impairments did not meet a listing. (Tr. 21). At step four, he found that Claimant retained the residual functional capacity ("RFC") to perform light work that imposed functional limitations consistent with an individual with the claimant's age,

education, work experience, and residual functional capacity. (Tr. 36). Specifically, the ALJ found Claimant was limited

> to occasional climbing of ramps or stairs. She is unable to climb ladders, ropes, or scaffolds. She is limited to frequent balancing, and to occasional stooping, kneeling, crouching, or crawling. She is limited to frequent handling and fingering bilaterally and to frequent reaching overhead bilaterally. She must avoid frequent exposure to dust, odors, fumes, and pulmonary irritants. She is able to understand, remember and carry out simple routine and repetitive tasks with routine supervision and make related judgments. She is able to focus for two-hour periods with routine work breaks. She would work best in a setting with limited contact with supervisors and co-workers, and she should avoid interaction with the general public. She is able to adapt to work setting and some forewarned changes in a usually stable work setting. She must not be required to work at fast-paced production line speeds. (Tr.25).

The ALJ found that this RFC prevented Claimant from returning to any of her past relevant work. (Tr. 35). Next, the ALJ proceeded to step five and determined that Claimant was not disabled because there was other work that exists in significant numbers in the national economy that she could perform. (Tr. 36).

## Review

Claimant contends the ALJ erred by: (i) failing to properly consider the opinion of the mental CE, and (ii) failing at step five of the sequential disability analysis process. The relevant evidence reflects the ALJ considered Claimant's mental health diagnoses, along with her reports of anxiety and panic attacks to Dr. Parind S. Shah, M.D., prior to the relevant period. (Tr. 28–30, citing Tr. 614). The ALJ noted other reports from Claimant that she had anxiety during the relevant period, and that she was taking medication that was not helping her anxiety and depression. (Tr. 29–30, citing Tr. 891–96, 996). The ALJ also considered examination findings that Claimant had a sad and anxious affect. (Tr. 30, citing Tr. 891–96, 996). However, the ALJ further discussed several contrary instances where Claimant denied anxiety and depression, was in no acute distress,

had a euthymic affect and mood, was cooperative, had appropriate behavior, had normal cognition and thought content, and had good insight and judgment. (Tr. 28–29, citing 614, 621–22, 671,679, 733–60, 874–77, 891–96). The ALJ also considered Claimant's reports to Dr. Michael Collins, M.D., that she had no side effects from her medications, and that she had no psychological, mood, or anxiety symptoms. (Tr. 30, citing Tr. 1100, 1119).

Further evaluating Claimant's mental impairments, the ALJ considered the consultative examination conducted by Dr. Amy Hudson during the relevant period. (Tr. 23, 32, citing Tr. 1046–53). The ALJ explained the examination demonstrated that Claimant had adequate recent recall but could remember only three out of five items in a memory test after a five-minute delay, and that, while Claimant refused to perform a serial 7s test, she was able to count backwards and complete serial 3s. Her estimated intellectual ability was low average. (Tr. 23–24, citing Tr. 1046–53). The ALJ also acknowledged that Dr. Hudson opined, based on her examination and Claimant's reports of her symptoms, that Claimant was capable of understanding and remembering simple work instructions and perform routine, repetitive tasks; could maintain persistence and pace for a 4-hour period; could interact with coworkers and supervisors; could adapt to workplace stressors; and would benefit from a structured and supportive work environment to maximize her potential. (Tr. 32, citing Tr. 1046–53).

After articulating the persuasiveness of Dr. Hudson's opinions as required by the controlling regulations, the ALJ explained that he did not find them very persuasive because they were otherwise inconsistent with Claimant's generally normal mental status examinations. (Tr. 32, citing Tr. 890–902, 995–1004, 1104–17). However, despite finding them not very persuasive, the ALJ assessed an RFC largely consistent with, and in several ways more restrictive than Dr. Hudson's opinions, finding that Claimant could understand, remember, and carry out simple and

routine tasks; could not work at fast-paced production line speeds; could focus for only two-hour periods; and could adapt to only some, forewarned changes in a usually stable work setting. (Tr. 25).

Claimant has offered no persuasive authority in support of her request that this Court reweigh Dr. Hudson's statement and find that it demands a finding of disability. *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000) ("in conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the Commissioner."). In fact, Claimant has not demonstrated that Dr. Hudson's statement is inconsistent with the ALJ's assessment of Claimant's RFC. The limitations to simple, routine, non-fast paced work, requiring limited interaction with others and no interaction with the public, in a usually stable work setting where there are only *some* changes, which must be forewarned, is consistent with the recommendation that Claimant would perform best in a structured and supportive environment. Additionally, Dr. Hudson's opinion Claimant can work in a "structured and supportive work environment," is not a medical opinion. A medical opinion is a "statement from a medical source about what you can still do despite your impairment(s) . . . ." 20 C.F.R. § 404.1513(a)(2). Dr. Hudson's statement that Claimant "would benefit from a structured and supportive work environment to maximize her potential" instead concerns how Claimant could maximize her performance given her impairments, but it does not set out Claimant's functional limitations and what she can do despite those impairments. (Tr. 1051). *See* 20 C.F.R. 404.1513(a)(2). Therefore, the Court finds the assessment of Claimant's mental RFC was supported by the ALJ's analysis of all the relevant evidence.

Finally, Claimant's second argument also fails because the Court finds substantial evidence supports the ALJ's step five findings. At step five of the sequential evaluation process, there is a

limited shift in the burden of production to the Commissioner to demonstrate that other work exists in significant numbers in the national economy that the claimant can perform. *See* 20 C.F.R. § 404.1560(c)(2). To meet this limited burden of production, an ALJ may rely on vocational expert (VE) testimony. *See Heckler v. Campbell*, 461 U.S. 458, 461, 465, 470 (1983).

Here, the ALJ asked the VE about a hypothetical individual with Claimant's age, education, work experience, and RFC. (Tr. 72–75). The VE testified that such an individual could work as a food preparation worker, a laundry worker, or as an office helper. (Tr. 72–73). The ALJ relied on this expert testimony when he found at step five that, even if Claimant could not do her past relevant work, she could do other work existing in significant numbers in the national economy. (Tr. 36). *See Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993) (when the findings regarding a claimant's impairment are adequately reflected in the ALJ's hypothetical questions to the VE, the VE's testimony constitutes substantial evidence to support the ALJ's related determination).

Claimant argues there was a conflict between the VE's testimony and Claimant's RFC, because the DOT listing for each of the jobs states that "The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible." Pl.'s Br. at 10. Claimant suggests the jobs identified by the ALJ required fast paced production pace, which was inconsistent with her RFC which stated that she "must not be required to work at fast-paced production line speeds." (Tr. 25). But, as noted by the Commissioner, Claimant is not citing to the individual job descriptions in the DOT. Instead, she is pointing to an appendix that is generally describing how the term "Light Work" is defined in the DOT and explaining why work may be considered "Light Work" even if it includes lifting only a negligible amount of weight. DOT, app.

C, pt. III, 1991 WL 688702 (Jan. 1, 2016) (Doc. 22 at 10). Claimant cannot show, by citing generally to the definition of Light Work in the DOT, that her RFC was inconsistent with any of the jobs identified by the VE or that the ALJ found, referencing the VE's testimony, that she could perform.

Further, the Court finds all three jobs identified by the ALJ are considered light work jobs. *Id.*; *See* DOT #520.687-046, 1991 WL 674058; DOT #361.687-014, 1991 WL 672991; DOT #239.567-010, 1991 WL 672232. Each of those contains the general definition for light work, which makes clear, as does the appendix, that a job can be rated light work for several reasons even if the amount of weight lifted is negligible, including if they involve production rate pace entailing constant pushing and pulling of materials. *See id.* None of these job descriptions require such production rate pace or constant pushing or pulling of materials. *Id.* In fact, these descriptions state that the jobs require only frequent, as opposed to constant, reaching and handling. Therefore, Claimant has not demonstrated a conflict between the VE's testimony and the RFC assessment.

## Conclusion

The Court finds that correct legal standards were applied by the ALJ, and substantial evidence supports the ALJ's finding that Claimant could do other work existing in significant numbers in the national economy. Accordingly, the decision of the Commissioner is hereby **AFFIRMED.**

**IT IS SO ORDERD this 20th day of March, 2024.**

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma